**STATE v WALD**

Ohio Appeals, 7th Dist, Mahoning Co

No 2351.  Decided April 23, 1937

J. H. Leighninger, Youngstown, for plaintiff-appellee.

D. F. Rendinell, Youngstown, for defendant-appellant.

**OPINION**

By ROBERTS, J.

The parties may be hereinafter designated as the State and the defendant. At the January Term, 1934, in the Court of Common Pleas, a grand jury of Mahoning County returned an indictment against the defendant, together with other persons, charging as follows:

"The jurors of the grand jury of the County of Mahoning, and State of Ohio, then and there duly empaneled, sworn and charged to inquire of and present all offenses whatever committed within the limits of said county, on their said oaths, in the name and by the authority of the State of Ohio, do find and present: that Joseph Wald; Abe Feibus; Harold L. Smith; Nich Brown, alias George Boran, alias Sam Behan, alias. Felon Muntean; Mary Brown, alias Mary Boran, alias Mary Behan; Sam Situ, alias Filiman Tetau; and Jack Greenfield, alias Jack Rose, alias John Rosen (hereinafter called defendants) late of said county, on the 14th day of October, in the year of our Lord one thousand nine hundred and thirty-one, at the County of Mahoning aforesaid unlawfully did falsely pretend, with intent to defraud, to Harvard Accident and Indemnity Company, that Sam Situ, alias Filiman Tetau; Mary Brown, alias Mary Boran, alias Mary Behan; Nick Brown, alias George Boran, alias Sam Bohan, alias Felon Muntean; Charles Burke and Minnie Burke, sustained certain personal injuries in an automobile accident

on the 26th day of September, 1931; that the said accident occurred about one mile south of Girard, Ohio, and was brought about by the negligence of Jack Greenfield, alias Jack Rose, alias John Rosen, who was then and there the driver of a car owned by Anna Maud Lantz, which said car had been duly insured against liability by Hartford Accident and Indemnity Company, and which accident was reported to the said Hartford Accident and Indemnity Company on the 30th day of September 1931; by which said false pretenses, relied upon by the said Hartford Accident and Indemnity Company, the said defendants then and there unlawfully did obtain from the said Hartford Accident and Indemnity Company drafts aggregating $5500.00, which said drafts were duly paid and the proceeds thereof obtained by the said defendants; said money being of the personal property of the said Hartford Accident and Indemnity Company; whereas in truth and in fact no such accident occurred and Sam Situ, alias Filiman Tetau, Mary Brown, alias Mary Boran, alias Mary Bohan; Nick Brown, alias George Boran, alias Sam Bohan, alias Felon Muntean; Charles Burke and Minnie Burke, received no injuries therein, and had no real or valid claims against the said Hartford Accident and Indemnity Company; and the said defendants, at the time they so falsely pretended as aforesaid, well knew the said false pretenses to be false."

On April 6th, 1936, the defendant was duly arraigned and pleaded not guilty. May 25th, 1936, the defendant was placed upon trial before a jury upon the charge contained in the indictment hereinbefore quoted. May 28th, 1936, a verdict of guilty was returned against the defendant. Motion for new trial was subsequently filed and overruled. Thereafter the defendant was sentenced by the trial court to imprisonment for an indeterminate term for not less than one year nor more than three years, and to pay costs. Motion for new trial was overruled. Notice of appeal of defendant to this court was filed July 2nd, 1936. The cause of the appellant has been orally argued in this court and written briefs filed by both counsel for the appellant and the prosecuting attorney, and the issue thus raised as to whether there was reversible error in the trial in the Court of Common Pleas is for the determination of this court. It may now be stated that during the trial, near its conclusion, and after the testimony of witnesses the State of-

fered in evidence exhibit No. 12. This offer was made on page 266 of the bill of exceptions. This exhibit is found, among other exhibits, on page 312 of the bill of exceptions. It consists of twelve typewritten pages and purports to be a statement related or dictated by the defendant relating to some half dozen or more transactions similar to that charged against the defendant in the indictment in this case, and including the transaction included in said indictment, which at its conclusion bears the purported signature of the defendant, Joseph Wald. It may further be stated that Joseph Wald nowhere in the trial denies his signature to this exhibit or that he made this statement as indicated by said exhibit, and does not attempt to dispute or deny the correctness thereof. The time of the offering of this exhibit and its place in the bill of exceptions will later on become pertinent in the consideration of this case.

The brief filed in behalf of the defendant enumerates ten complaints of error, which will be considered to the extent thought proper. The first three assignments of error are as follows:

1. The court erred in sustaining the challenge of the State to the juror Myers.

2. The court erred in refusing the appellant the exercise of a peremptory challenge made by him after the discharge of the juror Myers.

3. The prosecuting attorney was guilty of misconduct prejudicial to the rights of the appellant by which he was deprived of a fair and impartial trial in his voir dire examination of prospective jurors.

Commencing on page four of the record the prosecuting attorney commenced his statement and inquiries of the jury panel with regard to their qualifications or disqualifications to sit as jurors in the case. Commencing at the bottom of page 8 the prosecutor stated as follows to the prospective jurors:

"Now, let me ask further, if it should develope further in the trial of this law suit that this defendant, Joseph Wald, has been convicted for a similar offense and has been imprisoned, would that in any wise be permitted to so create sympathy in your minds as to cause you to feel that as a result you could not return a conviction, or rather a verdict of guilty in this case, even though you might feel that the evidence warranted such a verdict? In other words, if that

were to develop in the trial of this case, would you—do you feel that you might have a sympathy which would arise in your own hearts which would be permitted to reflect itself and to thus influence you in your determination of this case, feeling that if he has once been punished, that he therefore should not be punished, even though you did find him guilty of having actively participated in this, which you would find a criminal offense? I would like to ask each one of you. That to me is very, very important."

The prosecutor then proceeds to take up and inquire of the panel individually along this line, without objection by counsel for the defendant until after inquiries had been directed individually to a considerable number of the panel, when it was further inquired by the prosecutor:

"Now if you were convinced beyond a reasonable doubt that this defendant, Joseph Wald, is guilty of the offense with which he is charged and therefore should be punished for it, now knowing that and having come to that conclusion, do you think that you would go a step farther and say well here, he is a married man and has a family and therefore we ought not, or I couldn't bring in a verdict of guilty because of that."

Counsel for the defendant then said: "I object to that; that constitutes an argument."

Somewhat similar inquiries with objections further appear in the examination of the panel. Counsel for the defendant in this connection cites the case of **The State of Ohio v Huffman, 86 Oh St 229.** The first and second paragraphs of the syllabi in that case read as follows:

"1. The examination of persons called to act as jurors is limited to such matters as tend to disclose their qualifications in that regard, under the established provisions and rules of law, and hypothetical questions are not competent when their evident purpose is to have the jurors indicate in advance what their decision will be under a certain state of the evidence or upon a certain state of facts.

"2. Therefore, upon a trial under an indictment for bribery, it is not competent to inquire of a prospective juror upon his voir dire whether he will stand upon his opinion of not guilty, formed after due deliberation in the jury room, or will yield his opinion merely for the purpose of reaching a verdict in the case."

Herein we find the Supreme Court criticizing and holding improper the hypothetical questions, the evident purpose of which is to have jurors indicate in advance what their decisions will be under a certain state of the evidence or upon a certain state of facts. In the instant case the inquiries were not directed to the jury as to what their decision should be under a state of facts, but whether they would adhere to a decision based upon the facts and the evidence, regardless of sympathy for the accused by reason of having a family or having been formerly convicted, and permit that sympathy to counteract their judgment. This decision just cited was taken up to the Supreme Court by the State. Therefore, there could be no reversal, and whether the Supreme Court, had the case gone up the other way, would hold that the case should be reversed by reason of these inquiries, is not determined by the evidence. However, we find in the instructions of the court to the jury the court said:

"It is the duty of the jurors to confer with each other and give careful consideration to the views expressed by any juror while you are considering your verdict. A juror should not turn a deaf ear to the views of his fellow jurors, and without listening to the views and arguments advanced, obstinately stand upon his own opinion regardless of what may be said by his fellow jurors. It must be the object of all of you to arrive at a common conclusion."

It may be observed that if the jury followed this special instruction of the court upon this subject, and, if so, no prejudicial error could occur in this regard, and the manner of the inquiries is not found to be reversible error in this case.

On page 11 of the record the prosecutor was making inquiries of a Mrs. Myers, a prospective juror, and made this inquiry:

"Now, if you were convinced beyond a reasonable doubt that this defendant, Joe Wald is guilty of the offense with which he is charged and therefore should be punished for it, now knowing that and having come to that conclusion do you think that you would go a step farther and say well here, he is a married man and has a family and therefore we ought not, or I couldn't

322

bring in a verdict of guilty because of that."

Objection was made, overruled, and on page 12 Mrs. Myers answered:
"Well, I think in that case that I would say that I would, really give him another chance.
"Q. You would want to give him another chance; even though you felt he were guilty of the offense with which he is charged?
A. Yes, I would."

Mrs. Myers was challenged for cause. No error was committed in so doing. In a criminal case such as this, if Mrs. Myers had been accepted as a juror and adhered to her expressed determination not to find him guilty because he was a married man, then a conviction would have been impossible. Counsel for the defendant, however, makes the further contention in effect, that having exhausted his four peremptory challenges he had a right to and attempted to exercise a fifth peremptory challenge because of his contention that the court had wrongfully excused Mrs Myers. No error is found to have occurred on this matter.

At his fourth complaint, counsel for the defendant says that the prosecuting attorney was guilty of misconduct prejudicial to the rights of the appellant which would deprive him of a fair and impartial trial in his opening statements, and refers to what was said by the prosecutor on pages 48 to 65, inclusive, commencing with the following:

"I think perhaps I should preface this statement by saying that as a result of numerous fraudulent claims being made to various insurance companies upon claims that have been found to be entirely fraudulent," etc.

Counsel for the defendant claims that the prosecutor had no right to call to the attention of the jury that the defendant had been guilty of other similar offenses. As authority for such conduct on the part of the prosecutor attention is called to §§13444-19 GC and 122 Oh St 443, establishing a right to make proof of other offenses under the conditions stated in said section of the General Code, which by terms includes the conditions involved in the instant case. Further than this, so far as a preliminary statement is concerned, this was not a part of the evidence in the case, but only a part of what the prosecutor stated or claimed the facts to be in relation to the defendant, in effect claiming that the offense charged in the indictment was one of numerous offenses in which the defendant actively participated in the carrying out of a general scheme of faking automobile accidents which had no foundation in fact and from which no injuries resulted, and making false claims against the insurer of the automobile claimed to have been in an accident and collecting alleged damages from the insurance company. If the evidence were determined by the court to be not competent, undoubtedly the jury would be so instructed and further advised not to give any such unproved claim consideration, so that there was no reversible error in the making of this statement here complained of.

It further appears from the testimony, first by that of S. E. Siegfried, a postal inspector of the United States Government, with headquarters in Cleveland, that he was called in as an inspector in the investigation of certain frauds and claims made against insurance companies; that he had occasion to be present when statements were being taken from the defendant with reference to his activity in certain fraudulent claims against insurance companies; that he learned of a claim made against the Hartford Accident and Indemnity Company, known as the Anna Maud Lance case (which is the case in issue in this case), which accident was alleged to have occurred on the road about a mile south of Girard on Sept. 26, 1931; that the defendant made a statement in the office of the United States Attorney at Cleveland, Ohio, about January 13, 1935, there being also present Parker Fulton, Hugh McNamee, Assistant District Attorneys, Mr. Freed, United States Attorney, and Charles DeCarlo of Pittsburgh. Another witness called by the state was Ralph Harrison, who said that he was employed by the Travelers Insurance Company; that he was present in Cleveland on January 13th when a statement was taken from Joseph Wald in the District Attorney's office, and names the other persons present as stated by Mr. Siegfried. There appears to have been, as indicated by the evidence, another meeting and statement made on the 16th of January, or three days later. As stated, Mr. Siegfried was called as indicated in his testimony commencing at page 56 of the record. William Earl testified, commencing on page 169 of the record. Earl and Siegfried, and perhaps other witnesses

who testify to being present at these meetings were inquired of with regard to the admission or confession which is claimed that the defendant made on these occasions, in which he detailed ·at considerable length his complicity and connection with several similar fake accidents and the recovery of alleged damages therefore from the Hartford and another insurance company. It is claimed that the statements of the defendant did not constitute competent evidence without some prior evidence in the nature of corpus delicti. The statement of these witnesses with regard to what the defendant said or confessed differed in. no material respect from the typewritten and signed statement hereinbefore mentioned as having been made by the defendant, and which is identified as exhibit No. 12 in the bill of exceptions in this case.

Counsel for the defendant, as shown on page 130 of the record, objected to this oral testimony, and claimed a right to introduce evidence showing the involuntary character of the statement, the inducements and influences that were brought to bear on the defendant prior to the giving of a statement. It may be conceded so far as these alleged statements might be construed as confessions or admissions of guilt that counsel for the defendant had a right to call testimony and show, as suggested by him, that the statements were obtained by trickery, fraud, deception and undue influence and were not voluntary in character. The court not having sustained this contention of counsel, it became the duty of counsel for the defendant to state what he expected to prove if permitted in corroboration of his intention. Not having made any such statement, and the court, not being advised as to the nature of what proof might be adduced, was unable to determine whether prejudicial error occurred in this respect or not.

In the case of **George Rufer v The State of Ohio, 25 Oh St 464,** the second, third, and fourth paragraphs of the syllabi read as follows:

"The burden of showing that a confession of guilt was obtained by improper inducements rests with the defendant.

"Where, on a criminal trial, a witness is offered by the state to prove a confession made by the defendant, to the admission of which testimony the defendant objects, on the ground that the confession was not voluntary, it is the right of the defendant to inquire of the witness and prove his ob-

jection ·before the confession is given in evidence; and it is error for the court, in such case, to refuse him leave to make such examination until after the examination in chief has been concluded and the confession given to the jury.

"A judgment in such case, however, will not be reversed for refusnig the defendant leave to show, by preliminary proof, that the confession was obtained by improper inducements, unless the facts constituting the alleged inducements, as proposed to be proved, be set out in the record."

A more complete discussion of these propositions may be found on page 470, in the opinion of this case. It is thus apparent that the defendant wholly failed to protect and establish a right to prove that alleged statements were involuntary and inadmissible, and no error can be predicated upon this condition.

There was proof of. the corpus delicti in the testimony of Mary Brown, page .252 of the bill of exceptions. She frankly confesses that she was one of the conspirators in this case; that no· ·accident happened; that the scheme was planned by the defendant and that he paid her $100 for permitting her name to be used as one of the falsely alleged injured persons. Time will not be taken to read this testimony. As stated, this testimony commences on page 252 of the record, and the written and signed statement of the defendant, his alleged admission and confession appears on page 312 of the bill of exceptions, and was admitted in evidence on page 266, establishing the proposition that Mary Brown by her testimony established corpus delicti before the written confession was intro-. duced in evidence. It was wholly within the power of counsel for the defendant to make a defense in this case, to put his client upon the witness stand and secure his denial, if willing to do so, of the testimony of these witnesses, or to claim that the statement constituting the alleged confession, identified as exhibit 12, was made under duress or compulsion or was not voluntary, but nowhere in the record has he denied that this statement was given by him freely, willingly and truthfully. It is thus indicated that the refusal of · the court complained of was not prejudicial and that the defendant, if permitted, was not willing to avail himself of the privilege.

There is much other testimony in the case establishing the truth of the allegations of the indictment in this case,· and

**324**

further than that, as competent evidence hereinbefore explained and commented upon, purpose and intent are conclusively shown, but the uncontroverted testimony that this transaction was only one of numerous others in which insurance companies were being looted by false claims of fictitious accidents and injuries which had no existence in truth or in fact.

Possibly some other matters may have received the objection of counsel for the defendant which have not now been mentioned, and regarding them, if such existed, it may be said that careful consideration has been given to all of the contentions of counsel for the defendant, with the result that no reversible error is found in this case, either upon the propositions herein discussed or upon any other contention made in behalf of the defendant.

Judgment of the Court of Common Pleas is affirmed and the cause remanded for execution of judgment.

NICHOLS and CARTER, JJ, concur.